# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| CHRISTOPHER E. SWAN, <br>     Plaintiff, <br><br>     v. <br><br> NANCY A. BERRYHILL, <br> Deputy Commissioner for Operations, <br> Social Security Administration, <br>     Defendant. | ) <br> ) <br> ) <br> )    CAUSE NO.: 2:18-CV-047-JEM <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Christopher Swan on February 1, 2018, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18], filed August 17, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On September 25, 2018, the Commissioner filed a response, and on October 15, 2018, Plaintiff filed a reply.

**I.  Background**

On December 20, 2013, Plaintiff filed an application for benefits alleging that he became disabled on September 28, 2008. Plaintiff's application was denied initially and upon reconsideration. On August 5, 2016, Administrative Law Judge ("ALJ") Shane McGovern held a hearing, which was continued in order for Plaintiff to secure representation. A second hearing occurred on February 2, 2017, at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 29, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1

1. The claimant had not engaged in substantial gainful activity since December 20, 2013, the application date.

2. The claimant has severe impairments: adjustment disorder; major depressive disorder; alcohol use disorder; cannabis use disorder; anti-social personality disorder; mood disorder NOS; mild lumbar spine degenerative disc disease and mild cervical spine degenerative disc disease.

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. Through the date last insured, the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) except the claimant could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; never overhead reach on the right otherwise frequent reaching bilaterally; no exposure to moving mechanical parts or unprotected heights; simple, routine and repetitive tasks; no tandem tasks or teamwork where one production step is dependent upon a prior step; no interaction with the public and occasional interaction with coworkers and supervisors.

5. The claimant has no past relevant work.

6. The claimant was 39 years old at the time the application was filed, which is defined as a younger individual.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant can performed.

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 20, 2013, the date the application was filed.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner

commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in evaluating Plaintiff's RFC and in weighing the opinion of Plaintiff's treating physician. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

Plaintiff argues that the ALJ erred in evaluating his mental RFC by failing to account for his moderate limitations in concentration, persistence, and pace, instead limiting Plaintiff to "simple, routine, and repetitive tasks [and] no tandem tasks or teamwork where on production step is dependent upon a prior step." AR 14. The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995,

1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In assessing a claimant's RFC, the ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The discussion must establish a logical bridge between the evidence and the conclusion. *See O'Connor-Spinner*, 627 F.3d at 618; *Briscoe*, 425 F.3d at 352 (remanding where the ALJ "did not explain how he arrived at these [RFC] conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision").

When a claimant experiences limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

In the hypothetical posed to the VE, the ALJ asked about light work with some physical limitations, and then added limitations "to simple, routine and repetitive tasks," along with "no tandem tasks or team work or one production step is dependent upon a prior step. We'll say no

5

interaction with the public but can handle occasional interaction with co-workers and supervisors." AR 1270. The VE testified that there were jobs available for those mental limitations at both light work and sedentary work. Further, the VE testified that a person could only be off task up to fifteen percent of the time depending on the assigned duties, and that a person could not miss more than two days a month. AR 1272, 1275.

The ALJ is required "to orient the VE to the totality of a claimant's limitations," including concentration, persistence, and pace. *O'Connor-Spinner,* 627 F.3d at 619. The Seventh Circuit Court of Appeals has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) (listing cases); *see also, e.g., Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (holding that limitations to work "free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors . . . fail to account for all of [the plaintiff]'s difficulties maintaining concentration, persistence, and pace, which, as the record shows, were related to her diagnosed anxiety and depression"); *Jelinek v. Astrue*, 662 F.3d 805, 813-14 (7th Cir. 2011) (concluding that limitations to sedentary and light unskilled work did not "address[] the impact of the mental limitations . . . which . . . limited [the plaintiff]'s ability to maintain regular work attendance, to carry out instructions, and to deal with the stresses of full-time employment"); *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public" and collecting cases); *Craft v.*

6

*Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (finding that a limitation to unskilled work did not account for limitations in concentration, pace, and mood swings); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with coworkers and limited contact with the public" was inadequate to take into account the claimant's limitations); *see also* SSR 85-15, 1985 WL 56857 at *6 (Jan. 1, 1985) ("[B]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

In this case, the record reflected that Plaintiff had difficulty with task completion, crying spells, and attendance at appointments. Plaintiff struggled with irritability, which affected his concentration, persistence, and pace, and he required prompts and guidance to complete tasks. The ALJ's hypotheticals related to the VE did not articulate these limitations, and the ALJ failed to draw a "logical bridge" to the conclusion that Plaintiff could sustain employment with only the limitations reflected in the RFC.

Plaintiff also argues that the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Melvin Richardson. "[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the

7

physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In a medical source statement, Dr. Richardson opined that Plaintiff could not sit or stand for more than 15 minutes at a time or for two hours total over an eight-hour workday, among other restrictions, and that Plaintiff was "[i]ncapable of even 'low stress' work." The ALJ granted Dr. Richardson's opinion "very little weight," stating that it was inconsistent with his treatment notes documenting some positive test results with regard to Plaintiff's strength, sensation, and range of motion, and noting that Plaintiff never had surgery or diagnostic testing that showed nerve root impingement or stenosis. The ALJ did not adequately explain why Plaintiff displaying normal strength, sensation and range of motion during examinations contradicted Dr. Richardson's opinion about Plaintiff's capabilities over the course of a workday, particularly since the limitations were based in part on Plaintiff's pain and the need to take breaks over an extended period of time. Nor did the ALJ analyze each of the required regulatory factors, including the length and frequency of the treatment relationship (at least twenty times over a forty-nine month period).

On remand, the ALJ is directed to thoroughly address the combination of Plaintiff's impairments, including the alleged crying spells, on his ability to work. *See, e.g., Terry v. Astrue*,

580 F.3d 471, 477 (7th Cir. 2009) ("Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."). Further, the ALJ is directed to carefully evaluate the opinions of Plaintiff's treating physician using the relevant factors listed in 20 C.F.R. §§ 416.927(c)(2)-(5), including the length and nature of Dr. Richardson's treating relationship with Plaintiff, and to provide a "sound explanation" if he rejects that opinion. As for the remaining arguments in Plaintiff's brief, the Court expresses no opinion about the ALJ's decision nor the decision to be made on remand. However, the Court instructs the ALJ to build a logical bridge between the evidence in the record and the ultimate conclusions, whatever those might be. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusion."). The Commissioner should not assume that any allegations not discussed in this opinion have been adjudicated in her favor.

IV.     Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 19th day of June, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record